**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000413**
**30-OCT-2017**
**08:52 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellant, v.
LAURA PITOLO, Defendant-Appellee

NO. CAAP-16-0000413

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-0407)

OCTOBER 30, 2017

FUJISE, PRESIDING JUDGE, LEONARD AND REIFURTH, JJ.

OPINION OF THE COURT BY LEONARD, J.

Plaintiff-Appellant State of Hawai'i (**State**) appeals from the Findings of Fact, Conclusions of Law, and Order Granting Defendant-[Appellee] Laura Pitolo's (**Pitolo**) Motion to Dismiss Felony Information With Prejudice (**Dismissal Order**), filed on April 25, 2016, in the Circuit Court of the First Circuit (**Circuit Court**).[1]

---

[1]     The Honorable Rom A. Trader presided.

We hold, *inter alia*, that: (1) the State properly exercised its prosecutorial discretion in charging Pitolo with multiple offenses, even though several of the offenses were charged as similar continuing-course-of-conduct crimes and the charges overlapped in time; (2) each count of a felony information constitutes a separate offense for the purpose of determining "the earliest date of the discovery of the offense" for the purpose of determining the extended statute of limitations pursuant to Hawaii Revised Statutes (HRS) § 701-108(3)(a); (3) to the extent that the Circuit Court, in effect, treated all six counts charged against Pitolo as a single "offense" for the purpose of determining "the earliest date of the discovery of the offense" in its application of HRS § 701-108(3)(a), it erred in doing so; and (4) while it is permissible to charge and prove an offense covering any part of the time span of a continuing crime, and the State was free to do so in this case, it is not permissible to disregard discovered conduct that is (a) indisputably part of the continuing course of conduct, as charged, and (b) that occurred within the charged period, in order to avoid the running of the statute of limitations. We affirm in part, vacate in part, and remand.

I.    BACKGROUND

The Wai'anae Community Outreach (WCO) is a not-for-profit community organization that provides services to the homeless population on the leeward coast of O'ahu. WCO relies, in significant part, on funding from the State through the Department of Human Services (DHS). Pitolo was employed at WCO

as a program manager until she left the organization in May of 2010.

On August 7, 2010, then WCO Executive Director Sophina Placencia (**Placencia**) filed a police report with the Honolulu Police Department (**HPD**). HPD Officer Robert King reported that during his interview with Placencia, Placencia relayed to him that, on May 27, 2010, she discovered evidence of theft from a WCO bank account after Pitolo abruptly quit her job. Placencia explained that she discovered a number of suspicious checks when reviewing the WCO's bank account records. Some of the checks were made out to "cash," others were made out to Pitolo's father, Pulouoleola Salausa (**Salausa** or **Pitolo's Father**), and some were written to Pitolo herself. Although Pitolo was authorized to write checks, both Placencia and Pitolo were required to sign them; only Pitolo had signed the suspicious checks. Pitolo did not have permission to write checks to herself. Placencia further reported that between May 27, 2010, and July 7, 2010, Pitolo had written eight additional checks from three of WCO's bank accounts.[2] Attached to the police report, along with Placencia's handwritten statement, there was also a withdrawal slip for $1,134.00 from a WCO Bank of Hawai'i account, dated June 16, 2010, which was signed by Pitolo.

HPD Detective Greg Bentosino filed a report, last updated on December 30, 2010, which shows that on August 16,

---

[2] Placencia related that upon Pitolo leaving the WCO, Placencia attempted to convene WCO's board of directors to have Pitolo removed from the authorized signers card with the Bank of Hawai'i, but the meeting could not be held until July 7, 2010, at which time the board removed Pitolo from the authorized signers card.

2010, Placencia supplemented the original police report by reporting another twenty-nine unauthorized transactions from a WCO American Savings Bank account that allegedly occurred between September 4, 2009, and February 25, 2010, which brought the total number of unauthorized checks reported to HPD to thirty-seven. The checks were written out to Pitolo, Jamye Windsor (a co-worker) (**Windsor**), WCO, Salausa, Leipaoa Salausa (Pitolo's Sister), and "Cash." Detective Bentosino's report noted that "[a]ttempts to contact Leipaoa Salausa, Pulouoleola Salausa, and Pitolo to schedule interviews with them have been unsuccessful." HPD took no further investigative action.

On July 25, 2013, WCO filed a civil complaint (**Complaint**) against Pitolo in the Circuit Court (Civil No. 13-1-2050-07), alleging that Pitolo had converted approximately $762,046.25 of WCO's monies for Pitolo's own use through cash withdrawals, debit purchases using WCO's debit card, and checks written to herself and to family members and friends. In the Complaint, WCO alleged that between 2007 and 2010, Pitolo issued monies through unauthorized checks totaling $60,844.60 to Windsor, $169,215.00 to Pitolo's Father, and $141,190.87 to herself. The Complaint further alleged that Pitolo made unauthorized cash withdrawals totaling $390,795.78.

On September 5, 2013, after WCO filed the Complaint against Pitolo, the DHS began an investigation and an audit of WCO. On November 13, 2013, after the allegations against Pitolo became publicized through news broadcasts, the Office of the Attorney General (**AG**) began an investigation into the financial

practices of WCO; Chief Special Agent Daniel Hanagami was assigned to conduct the AG investigation. The AG investigation took over the DHS investigation and all records and documents in the possession of the DHS were turned over to the AG. During its investigation, the AG located numerous additional alleged unauthorized transactions, which had not been specified in the original police report or the supplement filed by Placencia in 2010.

On March 17, 2015, the State charged Pitolo by Felony Information with five counts of Theft in the First Degree, in violation of HRS §§ 708-830(2) (2014)[3] and 708-830.5(1)(a) (2014),[4] as follows:

> COUNT 1: On or between February 13, 2009 and July 16, 2010, in a continuing course of conduct, in the City and County of Honolulu, State of Hawaii, [PITOLO] did obtain or exert control over the property of the [STATE] and/or [WCO] by deception, with intent to deprive the [STATE] and/or [WCO] of the property, by writing unauthorized checks to [WINDSOR], the value of which exceeded $20,000, thereby committing the offense of THEFT IN THE FIRST DEGREE in violation of Sections 708-830(2) & 708-830.5(1)(a), [HRS].
>
> The State further alleges that the earliest date of the discovery of the offense by the [State] or by a person

---

[3] HRS § 708-830 provides, in relevant part:

**§ 708-830 Theft.** A person commits theft if the person does any of the following:
. . . .

    (2)    Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

[4] HRS § 708-830.5 provides, in relevant part:

**§ 708-830.5 Theft in the first degree.** (1) A person commits the offense of theft in the first degree if the person commits theft:
    (a)    Of property or services, the value of which exceeds $20,000;
. . . .

    (2)    Theft in the first degree is a class B felony.

who has a legal duty to represent the [State] and who was not a party to the offense was after September 5, 2013.

COUNT 2: On or between December 8, 2008, and April 16, 2010, in a continuing course of conduct, in the City and County of Honolulu, State of Hawaii, [PITOLO] did obtain or exert control over the property of the [STATE] and/or [WCO] by deception, with intent to deprive the [STATE] and/or [WCO] of the property, by writing unauthorized checks to [PITOLO'S FATHER], the value of which exceeded $20,000, thereby committing the offense of THEFT IN THE FIRST DEGREE in violation of Sections 708-830(2) & 708-830.5(1)(a), [HRS].

The State further alleges that the earliest date of the discovery of the offense by the [State] or by a person who has a legal duty to represent the [State] and who was not a party to the offense was after September 5, 2013.

COUNT 3: On or between March 16, 2007, and July 6, 2010, in a continuing course of conduct, in the City and County of Honolulu, State of Hawaii, [PITOLO] did obtain or exert control over the property of the [STATE] and/or [WCO] by deception, with intent to deprive the [STATE] and/or [WCO] of the property, by writing unauthorized checks to herself, the value of which exceeded $20,000, thereby committing the offense of THEFT IN THE FIRST DEGREE in violation of Sections 708- 830(2) & 708-830.5(1 )(a), [HRS].

The State further alleges that the earliest date of the discovery of the offense by the [State] or by a person who has a legal duty to represent the [State] and who was not a party to the offense was after September 5, 2013.

COUNT 4: On or between December 27, 2007, and May 26, 2010, in a continuing course of conduct, in the City and County of Honolulu, State of Hawaii, [PITOLO] did obtain or exert control over the property of the [STATE] and/or [WCO] by deception, with intent to deprive the [STATE] and/or [WCO] of the property, by making unauthorized ATM cash withdrawals, the value of which exceeded $20,000, thereby committing the offense of THEFT IN THE FIRST DEGREE in violation of Sections 708-830(2) & 708-830.5(1)(a), [HRS].

The State further alleges that the earliest date of the discovery of the offense by the [State] or by a person who has a legal duty to represent the [State] and who was not a party to the offense was after September 5, 2013.

COUNT 5: On or between January 14, 2008, and June 2, 2009, in a continuing course of conduct, in the City and County of Honolulu, State of Hawaii, [PITOLO] did obtain or exert control over the property of the [STATE] and/or [WCO] by deception, with intent to deprive the [STATE] and/or [WCO] of the property, by making unauthorized debit transactions, the value of which exceeded $20,000, thereby committing the offense of THEFT IN THE FIRST DEGREE in violation of Sections 708-830(2) & 708-830.5(1 )(a), [HRS].

The State further alleges that the earliest date of the discovery of the offense by the [State] or by a person who has a legal duty to represent the [State] and who was not a party to the offense was after September 5, 2013.

The Felony Information also charged Pitolo with one count of Theft in the Second Degree, in violation of HRS §§ 708-830(2) and 708-831(1)(b) (2014),[5] as follows:

> COUNT 6: On or about May 10, 2010, in the City and County of Honolulu, State of Hawaii, [PITOLO] did obtain or exert control over the property of the [STATE] and/or [WCO] by deception, with intent to deprive the [STATE] and/or [WCO] of the property, by writing an unauthorized check to YOUNG HO SIM, the value of which exceeded $300, thereby committing the offense of THEFT IN THE SECOND DEGREE in violation of Sections 708-830(2) & 708-831(1)(b), [HRS].
>
> The State further alleges that the earliest date of the discovery of the offense by the [State] or by a person who has a legal duty to represent the [State] and who was not a party to the offense was after September 5, 2013.

On January 12, 2016, Pitolo filed the Motion to Dismiss Felony Information With Prejudice (**Motion to Dismiss**) pursuant to, *inter alia*, HRS §§ 701-108, 701-114, 806-34, and 806-86, and Hawai'i Rules of Penal Procedure (**HRPP**) Rule 12. The Motion to Dismiss was based on "the State's failure to comply with the Statute of Limitations," "the untimely filing of criminal charges against the Defendant," and "the State's failure to accurately state the date of the earliest discovery of the alleged offenses in the Felony Information filed on March 17, 2015." The motion was supported by a Declaration of Counsel and a Memorandum of Law

---

[5]     At the time of the alleged offense, HRS § 708-831 provided, in relevant part:

> **§ 708-831 Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:
>
> . . . .
>
> (b)     Of property or services the value of which exceeds $300;
>
> . . . .
>
> (2)     Theft in the second degree is a class C felony. . . .

Subsequently, HRS § 708-831(b) was amended (in 2016), to increase the threshold from $300 to $750.

contending that the "date of discovery," for the purpose of calculating the expiration of the statute of limitations in this case under HRS §§ 701-108 (2)(d) and 701-108 (3)(a) (2014), was May 2010. Attached to the Motion to Dismiss as exhibits were the Placencia police reports, along with the civil complaint filed against Pitolo by WCO.

In the State's response to the Motion to Dismiss, the State conceded that thirty-seven transactions were discovered in 2010 and that HRS § 701-108 bars the State from prosecuting those transactions. The State asserted, however, that although fifteen of the previously discovered thirty-seven transactions were associated with Counts 1, 2, and 3, those particular transactions were not charged in the Felony Information, as stated in the sealed affidavit supporting the Felony Information. The State contended that these other transactions were not discovered until after September 5, 2013.

On March 22, 2016, the Circuit Court held a hearing on the Motion to Dismiss and, after the arguments of counsel, announced its ruling. Essentially, the court concluded that the earliest date of discovery of a criminal scheme by an aggrieved party was May 27, 2010, and certainly no later than August 7, 2010, and that the Felony Information was filed beyond the applicable statute of limitations.

On April 25, 2016, the Circuit Court entered the Dismissal Order concluding, *inter alia*, that the applicable statute of limitations in this case is governed by HRS §§ 701-

108(2)(d) and 701-108(3)(a).  The Circuit Court's Conclusions of Law (COLs) also stated:

2.    The applicable discovery date of the alleged thefts is either May 27, 2010 but no later than August 7, 2010. Therefore, the applicable statute of limitations expired on either May 27, 2013 or August 7, 2013.

3.    Both the [WCO] and the [State] are aggrieved parties for purposes of the extension of time allowed for purposes of calculating the applicable statute of limitations under [HRS] Section 701-108(3)(a).

4.    The court concludes that the discovery of the offense refers to the criminal scheme in this case, as opposed to the individual transactions or specific individual criminal acts alleged, and is governed by [HRS] Section 701-108(3)(a).

5.    The statute of limitations begins when either the aggrieved party or a person who has a duty to represent the aggrieved party and was not a party to the offense discovers the criminal scheme. *State v. Stan's Contracting, Inc.*, 111 Hawaii 17, 35 (2006).

6.    The alleged conduct that serves as the basis for all 6 Counts of the Felony Information filed in the instant case constitute one criminal scheme.

7.    The Felony Information filed on March 17, 2015 in the instant case was filed beyond the applicable statute of limitations.

On May 20, 2016, the State filed its Notice of Appeal.

II.   POINTS OF ERROR

On appeal, the State raises two points of error, contending that the Circuit Court erred:   (1) in concluding that the applicable statute of limitations expired on either May 27, 2013, or August 7, 2013; and (2) in concluding that the alleged conduct that served as the basis for the Felony Information constituted a single criminal scheme.  In conjunction with its second point of error, the State argues that even if the prosecution of Counts 1, 2, and 3 was untimely, the Circuit Court erred in dismissing Counts 4, 5, and 6.

III. APPLICABLE STANDARD OF REVIEW

An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong test. State v. Stan's Contracting, Inc., 111 Hawai'i 17, 23, 137 P.3d 331, 337 (2006). Therefore, a conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned. Id.

IV. DISCUSSION

A. The Statute of Limitations

The State argues that the Circuit Court erred when it concluded that the applicable statute of limitations for all of the charges against Pitolo expired on either May 27, 2013, when Placencia, as Executive Director of WCO, discovered Pitolo's alleged criminal offenses, or August 7, 2013, when the police were informed of some of Pitolo's alleged criminal offenses. The State submits that, under the circumstances of this case, the Circuit Court should have concluded that the earliest date that the charged offenses could have been discovered was after September 5, 2013, when the DHS began its investigation. On this basis, the State argues, the Circuit Court should have concluded that the March 17, 2015 commencement of the prosecution of Pitolo was timely.

1.   HRS § 701-108

The applicable statute of limitations is set forth in HRS § 701-108 (2014), as follows:[6]

> **HRS § 701-108  Time Limitations.**  (1) A prosecution for murder . . .
>
> (2)    Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitation:
>
>> (a)    A prosecution for manslaughter . . .
>>
>> (b)    A prosecution for a class A felony . . .
>>
>> (c)    A prosecution for any felony under part IX of chapter 708 . . .
>>
>> (d)    A prosecution for any other felony must be commenced within three years after it is committed;
>>
>> . . . .
>
> (3)    If the period prescribed in subsection (2) has expired, a prosecution may nevertheless be commenced for:
>
>> (a)    Any offense an element of which is either fraud, deception, as defined in section 708-800, or a breach of fiduciary obligation within three years after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is oneself not a party to the offense, but in no case shall this provision extend the period of limitation by more than six years from the expiration of the period of limitation prescribed in subsection (2);
>>
>> . . . .
>
> (4)    An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated.  Time starts to run on the day after the offense is committed.

Therefore, pursuant to HRS § 701-108(2)(d), a prosecution for first degree theft by deception generally must be commenced within three years after the offense is committed. However, pursuant to HRS § 701-108(3)(a), even if the three-year

---

[6]     In 2016, HRS § 701-108(3)(a) was amended to add reference to the offense of medical assistance fraud under section 346-43.5.  See HRS § 701-108(3)(a) (Supp. 2016).

period has expired, a prosecution for first degree theft by deception may nevertheless be commenced at a later date, based on a delayed discovery of the "offense" by either (1) an aggrieved party or (2) a person who has a legal duty to represent an aggrieved party and who is oneself not a party to the offense.[7] If such discovery of the "offense" is delayed, then the statute of limitations may be extended to as much as three years after the discovery, so long as the prosecution is commenced no later than six years after the date that the offense is committed.

Finally, pursuant to HRS § 701-108(4), "an offense" is "committed" either "when every element occurs" or, in the case of a statute intended to prohibit a continuing course of conduct, when "the course of conduct . . . is terminated." Here, Counts 1-5 of the Felony Information each charge a continuing-course-of-conduct offense of first degree theft by deception.[8] It is well-established that first degree theft can constitute a continuing offense. See State v. Martin, 62 Haw. 364, 371, 616 P.2d 193, 198 (1980). In Martin, the Hawai'i Supreme Court held that the defendant committed a continuing offense because, where the defendant periodically filed identical, fraudulent public assistance forms over a six-year period in order to receive welfare payments, each fraudulent transaction was the continuation of a single and uninterrupted criminal impulse. Id.

---

[7]     As neither party contends that the "who is not a party to the offense" clause is at issue in this case, the second potential discoverer is simply referred to hereinafter as "a person who has a legal duty to represent an aggrieved party." This shortened reference should not be read to substantively change this alternative.

[8]     Count 6 does not charge a continuing course of conduct.

at 369, 616 P.2d at 197. Consistent with HRS § 701-108(4), the supreme court further held that "the date of the most recent act of a continuing offense governs the application of the statute of limitations." Id. at 372, 616 P.2d at 198.

Here, Pitolo argued, and the Circuit Court concluded, that the term "offense" in HRS § 701-108(3)(a) & (4) "refers to the criminal scheme in this case, as opposed to the individual transactions or specific individual criminal acts alleged," based on the supreme court's opinion in Stan's Contracting. The Circuit Court further concluded, presumably relying on Stan's Contracting, that the conduct alleged in all six counts of the Felony Information constituted a single criminal scheme that was discovered in 2010. On that basis, the court dismissed the entire March 17, 2015 Felony Information on the grounds that it was not filed within the statute of limitations.

2. *Stan's Contracting*

The State argues that the Circuit Court erroneously relied on Stan's Contracting to determine that: (1) discovery of a criminal scheme triggers the HRS § 701-108 statute of limitations for each offense that is or may be part of a common criminal scheme; (2) the 2010 discovery of the thirty-seven unauthorized checks, as reported to HPD, constituted the discovery of Pitolo's scheme; (3) all of the criminal acts of theft allegedly committed by Pitolo were part of a single criminal scheme; and (4) therefore, the Felony Information was filed beyond the three-year limitations period dating from the discovery of the scheme and all of the offenses charged therein

must be dismissed. Under the circumstances of this case, we conclude that Stan's Contracting does not support these determinations in their entirety.

Stan's Contracting involved an appeal from the dismissal of a two-count indictment that charged the defendants, referred to therein as "Stan's Contracting" and "Murphy Construction," each with one count of theft by deception. Stan's Contracting, 111 Hawai'i at 18-19, 137 P.3d at 332-33. An employee of the State Department of Accounting and General Services (**DAGS**), Fidel Eviota II (**Eviota**), apparently submitted multiple invoices to DAGS for unperformed construction services. Id. at 19, 137 P.3d at 333. Pertinent to the Stan's Contracting case, Eviota allegedly funneled money through Stan's Contracting and Murphy Construction, by way of two separate contracts, to fund construction at various properties owned by Eviota. Id. at 20, 137 P.3d at 334. Charges against Stan's Contracting and Murphy Construction[9] were dismissed by the trial court (1) as time-barred, on the theory that theft by deception does not contain the element of fraud necessary to trigger the tolling provision in HRS § 701-108(3)(a),[10] and (2) as fatally defective because the indictment failed to allege statute-of-limitations-tolling facts. Id. at 19, 137 P.3d at 333.

---

[9]     No charges against Eviota were involved in Stan's Contracting.

[10]     At that time, HRS 701-108(3)(a) (Supp. 1997) only referred to offenses containing elements of fraud or breach of fiduciary obligation. Crimes with deception as an element were expressly added effective May 15, 2006. See 2006 Haw. Sess. Laws Act 99, § 1.

With regard to the first issue on appeal in <u>Stan's Contracting</u>, the supreme court held that theft by deception constitutes a form of fraud and therefore qualified for the tolling provision in HRS § 701-108(3)(a). <u>Id.</u> at 30, 137 P.3d at 344. In doing so, the supreme court noted that "deception represents a conduct element of HRS § 708-830(2) in that it is the accused's deceptive conduct in securing the property that gives rise to penal responsibility." <u>Id.</u>

As to the second issue raised in <u>Stan's Contracting</u>, the supreme court held that "when the charged offense is theft by deception, as defined by HRS § 708-830(2), and the prosecution is relying on the tolling provision of HRS § 701-108(3)(a). . . ., the prosecution must not only allege the timely date or dates of commission of the offense in the indictment, but also the earliest date of the discovery of the offense by an aggrieved party or a person who has a legal duty to represent [the] aggrieved party." <u>Id.</u> at 34, 137 P.3d at 348 (internal quotation marks and original ellipsis omitted).[11] In other words, the

---

[11]    Here, in the Motion to Dismiss, Pitolo asserted that the State failed to comply with the statute of limitations and that the State failed to "*accurately* state the date of the earliest discovery of the alleged offenses." (Emphasis added.) Pitolo did *not* argue, and the Circuit Court did not find or conclude, that the Felony Information failed to aver facts purporting to establish the timeliness of the prosecution. As set forth above, each count of the Felony Information avers that Pitolo committed certain acts constituting an offense of theft by deception as to the State and/or WCO and further avers that the earliest date of discovery of the offense by the State or by a person who has a legal duty to represent the State was after September 5, 2013. In essense, Pitolo argued that evidence showing WCO's discovery in May of 2010, the existence of which is acknowledged in the sealed probable cause affidavit supporting the Felony Information, established May 2010 as the earliest date of discovery of all of the charged offenses.

supreme court held that an indictment (or felony information)[12] must include an averment of facts that, if proven at trial, would establish that the extended statute of limitations had not expired. Id. The indictment in Stan's Contracting failed to aver such facts and therefore was insufficient. Id.

The court in Stan's Contracting continued its analysis, however, recognizing that an insufficient indictment or count can in some instances be cured by supplemental information provided to the accused, possibly through an offer of proof. Id. at 34-35, 137 P.3d at 348-49. In this appeal, Pitolo relies heavily on the Stan's Contracting court's use of the word "scheme" in its analysis of the adequacy of the prosecution's offer of proof, arguing that the supreme court's use of the term "scheme" was "intentional, necessary and significant" and that it "specifically indicates that the discovery of the scheme, rather than any single transaction, triggers the running of the SOL." As the Circuit Court here concluded that "the discovery of the offense refers to the criminal scheme in this case, as opposed to the individual transactions or specific individual criminal acts alleged" and that "[the] alleged conduct that serves as the basis for all 6 Counts . . . constitutes one criminal scheme," it appears that the Circuit Court agreed with and adopted Pitolo's contention.

---

[12]    HRS § 806-9 (2014) provides:  "All provisions of law applying to prosecutions upon indictments . . . shall in the same manner and to the same extent as near as may be, apply to information and all prosecutions and proceedings thereon."

The supreme court's use of the word "scheme" in this context is as follows:

> The indictment, however, is devoid of any facts averring **when the alleged involvement of the Appellees in Eviota's scheme was first discovered** and, therefore, provides no facts that, if proven at trial, would establish that the extended limitation period had not expired. The prosecution, at the July 26, 2002 hearing, attempted to cure this deficiency through an offer of proof that Ho first determined there was some criminal liability on the part of the Appellees on February 14, 2000. Under HRS § 701-108(3)(a), the period to indict would run until February 14, 2003, and the State's prosecution would therefore be timely inasmuch as it began on May 15, 2002.
>
> However, under HRS § 701-108(3)(a), the extension begins to run **when** *either* **the aggrieved party** *or* **the person who has a legal duty to represent the aggrieved party discovers the scheme**. The prosecution's offer of proof established, at most, when Ho, as an agent of the Department of the Attorney General, discovered the offense, **not when the aggrieved party itself, DAGS, learned of the scheme**. Therefore, to cure the indictment, **an affirmative offer of proof was required that no representative of DAGS had discovered the alleged involvement of the Appellees** prior to May 15, 1999. Absent such facts, the indictment did not sufficiently allege that the prosecution was timely.

Stan's Contracting, 111 Hawai'i at 34-35, 137 P.3d at 348-49 (quotation marks, brackets, and ellipses omitted; bold and underline emphasis added).

We reject Pitolo's reliance on this passage for a number of reasons. First, reading the passage as a whole, it is clear that the supreme court was referring to the discovery of the defendants' *involvement* or criminal conduct in Eviota's scheme, not merely the discovery of Eviota's scheme. Second, the issue that the supreme court was addressing was that the prosecutor's offer of proof only established when law enforcement discovered the offense, rather than when it was discovered by DAGS, the aggrieved party in Stan's Contracting. The court appeared to use the terms "offense" and "scheme" interchangeably in its discussion, without explicative purpose. Indeed, under

17

the facts of Stan's Contracting, there was no reason to distinguish between "the offense" and "the scheme." There was only a single count charged against each of the two defendants in Stan's Contracting; in other words, the State only alleged that each defendant engaged in a single criminal scheme, which scheme constituted the single charged offense. Unlike Pitolo, neither Stan's Contracting defendant was charged with multiple counts alleging multiple continuing-conduct offenses, with each count allegedly involving a discrete, albeit similar or related, offense. Stan's Contracting simply does not hold (or support the proposition) that if two or more offenses are of the same or similar character, or are even part of a single criminal scheme or plan, that the discovery of any offense, or any part of the criminal scheme or plan, necessarily constitutes the "discovery of the offense" for each and every offense charged, pursuant to the tolling provision in HRS § 701-108(3)(a).

3.    The Offenses Charged By the State

We examine the offenses charged in the context of Hawai'i's penal framework. As discussed above, the extended-statute-of-limitations period in HRS § 701-108(3)(a) begins to run upon the earliest date of the "discovery of the offense" by an aggrieved party or a person who has a legal duty to represent the aggrieved party. As stated in HRS § 701-102 (2014), no behavior constitutes an offense unless made so by the Hawaii Penal Code or another statute; in other words, an offense is that which is proscribed in the Hawaii Penal Code or another statute. An offense may constitute a crime or a violation. HRS § 701-102

(2014). With certain exceptions, a person may not be found guilty of an offense unless the person acted with the requisite state of mind with respect to each element of the offense. HRS § 702-204 (2014). HRS § 702-205 (2014) states:

> **§ 702-205 Elements of an offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
> (a) Are specified by the definition of the offense, and
> (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

The statutory provisions governing criminal procedure in the Circuit Courts, including the procedures for information charging, provide that "'the offense' means the specific offense constituted by the acts or omissions of the accused as distinguished from 'the transaction' which means the particular acts, facts, and circumstances which distinguish the offense committed from other offenses of the same nature." HRS § 806-1 (2014). Multiple offenses may be joined in one charge, with each offense in a separate count, "when the offenses: (1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." HRPP Rule 8(a) (format altered). A defendant may be *prosecuted* for multiple offenses arising from the same criminal conduct, although the defendant may not be *convicted* of multiple offenses when he or she has only engaged in a single continuing course of criminal conduct directed only at one criminal goal.

See HRS § 701-109(1)(e) (2014).[13] "This prohibition . . . does not apply where these actions constitute separate offenses under the law." State v. Arceo, 84 Hawai'i 1, 21, 928 P.2d 843, 863 (1996).

The State has wide prosecutorial discretion, including with respect to what charges will be filed, how many charges will be filed, and how to frame and argue the issues in the case. See, e.g., State v. Radcliffe, 9 Haw. App. 628, 639-40, 859 P.2d 925, 932 (1993). Here, the State exercised this discretion by charging Pitolo with multiple offenses, in six separate counts, which is clearly permitted under the statutory framework highlighted above.

In Count 1, the State averred, *inter alia*, that on or between February 13, 2009, and July 16, 2010, in a continuing course of conduct, Pitolo did obtain or exert control over the property of the State and/or WCO by deception, with intent to deprive the State and/or WCO of the property, by writing unauthorized checks to Windsor. In Count 2, the State averred, *inter alia*, that on or between December 8, 2008, and April 16, 2010, in a continuing course of conduct, Pitolo did obtain or exert control over the property of the State and/or WCO by deception, with intent to deprive the State and/or WCO of the property, by writing unauthorized checks to Salausa. In Count 3,

---

[13] The determination of whether a defendant may be convicted of more than one offense, based on "whether the evidence discloses one general intent or discloses separate and distinct intents," is a question of fact that must be decided by the trier-of-fact after trial. See, e.g., State v. Matias, 102 Hawai'i 300, 305, 75 P.3d 1191, 1196 (2003). Thus, the issue of whether the six separate offenses charged against Pitolo merged was not subject to the determination of the Circuit Court on Pitolo's Motion to Dismiss.

the State averred, *inter alia*, that on or between March 16, 2007, and July 6, 2010, in a continuing course of conduct, Pitolo did obtain or exert control over the property of the State and/or WCO by deception, with intent to deprive the State and/or WCO of the property, by writing unauthorized checks to herself. In Count 4, the State averred, *inter alia*, that on or between December 27, 2007, and May 26, 2010, in a continuing course of conduct, Pitolo did obtain or exert control over the property of the State and/or WCO by deception, with intent to deprive the State and/or WCO of the property, by making unauthorized ATM cash withdrawals. In Count 5, the State averred, *inter alia*, that on or between January 14, 2008, and June 2, 2009, in a continuing course of conduct, Pitolo did obtain or exert control over the property of the State and/or WCO by deception, with intent to deprive the State and/or WCO of the property, by making unauthorized debit transactions. And, in Count 6, the State averred, *inter alia*, that on or about May 10, 2010, Pitolo did obtain or exert control over the property of the State and/or WCO by deception, with intent to deprive the State and/or WCO of the property, by writing an unauthorized check to Young Ho Sim.

Thusly, the State charged that Pitolo engaged in multiple offenses, each of which is allegedly made up of particular criminal acts, facts, and circumstances supported by different factual evidence, which purportedly distinguishes each offense from the others, even though several of the offenses were charged as similar continuing-course-of-conduct crimes and the charges overlapped in time. We conclude that the State properly

exercised its prosecutorial discretion in charging Pitolo in this manner. To the extent that the Circuit Court, in effect, treated all six counts as a single "offense" for the purpose of determining "the earliest date of the discovery of the offense" in its application of HRS § 701-108(3)(a), it erred in doing so.[14] Each count of the Felony Information constitutes a separate offense for the purpose of determining "the earliest date of the discovery of the offense" for the purpose of determining the extended statute of limitations pursuant to HRS § 701-108(3)(a).

    B.    <u>Application of HRS § 701-108 to the Charged Offenses</u>

Although the Circuit Court erred in applying the statute of limitations in this manner, the court did not necessarily err entirely in its conclusion that charges were brought against Pitolo after the statute of limitations expired. As discussed above, the determinative issue is what is the earliest date of discovery by an aggrieved party or a person who has a legal duty to represent the aggrieved party, for each offense charged by the State.

In Count 1, Pitolo is charged based on a continuing course of conduct of theft by deception of property of the State and/or WCO, between February 13, 2009, and July 16, 2010, by writing unauthorized checks to Windsor. Pursuant to HRS § 701-108(4), this offense is committed "at the time when the course of

---

[14]    Pitolo is, of course, free to ask the trier-of-fact to find that there was just one culpable course of conduct. If it is determined that Pitolo's alleged acts all merge into and constitute a single continuing course-of-conduct offense, nothing in this opinion should be construed to bar her from seeking appropriate further relief based on that determination.

conduct or the defendant's complicity therein is terminated." Here, Pitolo's course of conduct that involved writing unauthorized checks to Windsor, as alleged in Count 1, terminated on July 16, 2010.[15] The State, however, further avers that the earliest date of discovery of this offense by the State or a person who has a legal duty to represent the State was after September 5, 2013.

The continuing-course-of-conduct offense charged in Count 1 spanned the period of time from February 13, 2009, to July 16, 2010. The State admits that an allegedly unauthorized check to Windsor was one of the unauthorized transactions reported by Placencia in August 2010.[16] The State submits, however, that it will not seek to prosecute Pitolo based on this particular item, which appears to have been dated September 4, 2009,[17] in its prosecution of Pitolo on Count 1 and therefore, the State argues, the 2010 discovery of this transaction should not trigger the statute of limitations on the offense charged in Count 1.

---

[15]    We note that, because the continuing-course-of-conduct offense charged in Count 1 did not terminate until July 16, 2010, pursuant to HRS § 701-108(4), the Circuit Court's earlier, May 27, 2010, "discovery date" is not at all relevant to the statute of limitations period. Similarly, the continuing-course-of-conduct offense charged in Count 3 did not terminate until July 6, 2010, rendering the May 27, 2010 date irrelevant as to that count. See HRS § 701-108(4) ("if a legislative purpose to prohibit a continuing course of conduct plainly appears, [an offense is committed] at the time when the course of conduct or the defendant's complicity therein is terminated").

[16]    The State also disclosed this information in the sealed probable cause affidavit in support of the Felony Information.

[17]    The sealed probable cause affidavit identified the check to Windsor by check number and amount and the police report included, inter alia, the date of the check with this check number and amount.

In Martin, the supreme court held that the State is not precluded from charging a defendant with an offense covering only part of the entire duration of a continuing-course-of-conduct offense. 62 Haw. at 369-70, 616 P.2d at 197. It did so based primarily on cases in other jurisdictions that have held that, with respect to a continuing offense that extends a period of time, "the prosecution may charge and prove the offense in any part of such period." Id. at 369, 616 P.2d at 197 (citations omitted).

This case is distinguishable. Here, in Count 1, the State exercised its prosecutorial discretion to charge a particular continuing-course-of-conduct offense spanning from February 13, 2009, to July 16, 2010, as opposed to, for example, separate offenses or a different period of time. While it is permissible to charge and prove the offense covering any part of the time span of a continuing crime, and the State was free to do so in this case, we hold that it is not permissible to disregard discovered conduct that is (1) indisputably part of the continuing course of conduct, as charged, and (2) that occurred squarely within the charged period, in order to avoid the running of the statute of limitations. To conclude otherwise would undermine the clear meaning and purpose of HRS § 701-108(3)(a), which is to allow the State an extended-but specifically limited-period of time to commence a prosecution, i.e., within three years after the earliest date of the discovery of the offense by an aggrieved party or a person who has a legal duty to represent the aggrieved party. See Stan's Contracting, 111 Hawai'i at 34,

137 P.3d at 348. Therefore, the statute of limitations on Count 1 began to run no later than the day after August 7, 2010,[18] and, as the Circuit Court concluded in part, the State failed to commence prosecution for the offense charged in Count 1 within three years of this date, *i.e.*, by August 7, 2013.

Based on this analysis, the State's prosecution of continuing-course-of-conduct offenses charged in Counts 2 and 3 is also untimely. In Count 2, Pitolo is charged based on a continuing course of conduct of theft by deception of property of the State and/or WCO, between December 8, 2008, and April 16, 2010, by writing unauthorized checks to Salausa. The State admits that eight of the allegedly unauthorized checks to Salausa were reported to HPD by Placencia in August 2010.[19] Similarly, in Count 3, Pitolo is charged based on a continuing course of conduct of theft by deception of property of the State and/or WCO, between March 16, 2007, and July 6, 2010, by writing unauthorized checks to herself. The State admits that six of the allegedly unauthorized checks written to Pitolo were reported to HPD by Placencia in August 2010.[20] Therefore, for the reasons

---

[18]    As the statute of limitations on Count 1 expired no later than August 7, 2013, we need not reach the issue of whether it expired on July 16, 2013.

[19]    This fact is also disclosed in the sealed probable cause affidavit in support of the Felony Information. Although the dates, amounts, and check numbers of these checks are not included in the affidavit, based on the police report, it appears that all of the checks reported to the police were dated between September 4, 2009, and July 6, 2010, and Placencia discovered unauthorized checks to Salausa on May 27, 2010.

[20]    This fact is also disclosed in the sealed probable cause affidavit in support of the Felony Information. Although the dates, amounts, and check numbers of these checks are not included in the affidavit, based on the police report, it appears that all of the checks reported to the police were dated between September 4, 2009, and July 6, 2010, Placencia discovered unauthorized checks Pitolo wrote to herself on May 27, 2010.

stated above, we conclude that the statute of limitations on Count 2 and 3 began to run no later than the day after August 7, 2010, and, as the Circuit Court concluded in part, the State failed to commence prosecution for the offenses charged in Count 2 and 3 within three years of this date, i.e., by August 7, 2013.

However, as the State argues in conjunction with its second point of error, as averred in Counts 4, 5, and 6, and as supported by the sealed probable cause affidavit, the earliest date of discovery of the offenses charged in each of Counts 4, 5, and 6, by an aggrieved party or a person who has a legal duty to represent the aggrieved party, was September 5, 2013. There are no discovered-but-omitted transactions with respect to the offenses charged in Counts 4, 5, and 6 disclosed in the sealed probable cause affidavit, reflected in the police reports, or admitted by the State. To be clear, the State still has the burden to prove beyond a reasonable doubt facts establishing that these offenses were committed within the time period specified in HRS § 701-108. See HRS § 701-114(e) (2014).[21] We conclude, nevertheless, that the Circuit Court erred in dismissing Counts 4, 5, and 6, based on its erroneous reading of Stan's Contracting

---

[21]    HRS § 701-114 provides, in relevant part:

§ 701-114  **Proof beyond a reasonable doubt.** (1) . . . [N]o person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
. . . .
    (e)   Facts establishing that the offense was committed within the time period specified in section 701-108.
    (2)   In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.

and its failure to properly apply HRS § 701-108(3)(a) to the offenses charged in these counts.

V.    CONCLUSION

For the foregoing reasons, we affirm the Circuit Court's April 25, 2016 Dismissal Order with respect to the dismissal with prejudice of Counts 1, 2, and 3, and vacate the Circuit Court's April 25, 2016 Dismissal Order with respect to the dismissal with prejudice of Counts 4, 5, and 6.  This case is remanded to the Circuit Court for further proceedings consistent with this Opinion.

On the briefs:

Michael Kagami,
Deputy Attorney General,
for Plaintiff-Appellant.

Taryn R. Tomasa,
Deputy Public Defender,
for Defendant-Appellee.